| | | |
|---|---|---|
| VICTOR SMALLS, | : | |
| *Petitioner*, | : | No. 3:17-CV-1739 (CSH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM FANEUFF, Warden, and | : | |
| DERRICK MOLDEN, Deputy Warden, | : | |
| *Respondents.* | : | JANUARY 7, 2018 |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

**Haight, Senior District Judge**:

*Pro se* petitioner Victor Smalls ("Smalls"), a prisoner currently confined at the Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2009 state court conviction for murder under Conn. Gen. Stat. §§ 53a-54a.[1]  Doc. 1 ("Petition for Writ of Habeas Corpus"). The respondents, Warden William Faneuff and Deputy Warden Derrick Molden, opposing the petition, argue that (1) the Petitioner has failed to exhaust his state court remedies, and (2) the state appellate court decisions affirming the judgment of conviction were based on a reasonable application of clearly established federal law.  Doc. 12 ("Response to Order to Show Cause").  Smalls filed a reply objecting to that response.  Doc. 13 ("Petitioner's Traverse to Order to Show Cause" or "Reply").  By this Ruling, the Court resolves the Petitioner's request for habeas relief.

---

[1]  The Court notes that although Smalls includes his contemporaneous conviction for "carrying a pistol without a permit" in violation of Conn. Gen. Stats. § 29-35(a) under "[n]ature of the offense involved," his Petition does not address that particular charge when seeking habeas relief. Doc. 1, at 3-4.  He thus makes no substantive application for habeas relief with respect to that charge.

# I. FACTS AND PROCEDURAL HISTORY

On March 17, 2009, Smalls was convicted after a jury trial on two criminal charges: murder, in violation of Conn. Gen. Stat. § 53a-54a, and carrying a pistol without a permit, in violation of Conn. Gen. Stat. § 29-35(a). Doc. 1, at 3; *see also State v. Smalls*, 136 Conn. App. 197, 202 (2012) (Doc.12-1).

The Connecticut Appellate Court summarized the underlying facts of the case as follows:

On the afternoon of March 22, 2007, Colonel Francis, James Gibson and the victim [Edgar Sanchez] drove to the vicinity of the Monterey Village housing project, which also is known as the Carlton Court housing project (apartment complex), in Norwalk. They parked their vehicle near the apartment complex, and Gibson went to sell narcotics, while the victim and Francis went to a nearby diner to wait for Gibson. When Gibson arrived at the diner, he told Francis and the victim that he thought something was going on outside and that they should leave the area. As they were walking back to their vehicle, Gibson noticed two hooded and masked individuals, later identified as Jimmy Kave and [Victor Smalls], following them, and he told the victim and Francis to walk faster. One of the hooded and masked individuals called out to the men, and Francis looked back and saw one of the men reach toward his waistline. Believing that the man was about to pull out a gun, Francis turned and ran toward the vehicle. The victim turned around to face the hooded and masked men, and [Smalls] and Kave both fired several shots at the victim, one of which hit him, causing his death. Gibson turned and saw both [Smalls] and Kave firing handguns. [Smalls] and Kave fled the scene after firing the shots. Francis heard the gunshots and then heard Gibson yelling for him to get the car. Francis got the car and parked it near the victim, who was located at or near the entrance to the apartment complex on Grove Street, and he and Francis attempted to get the victim into the car, but the victim collapsed. Gibson applied pressure to the victim's wound, while he and Francis waited for the police and an ambulance to arrive.

Moments earlier, a resident of the apartment complex, Tracie McElveen (T. McElveen), along with her twin sister, Stacie McElveen (S. McElveen), drove down Grove Street, where they saw three males walking toward the apartment complex, and drove into the parking area of the apartment complex shortly before they heard gunfire. They then saw two males wearing hoodies run from Grove Street and between buildings twelve and thirteen of the apartment complex, with their hoods clenched tight around their faces. T. McElveen then saw the men run into building thirteen of the apartment complex. As the McElveens drove away from the apartment complex, they saw the victim lying on his back, with blood all over him,

and they stopped their car. T. McElveen recognized the injured male as one of the three males she and her sister had seen walking toward the apartment complex a short time before. The other two males they had seen were nearby, and one of them asked for someone to call 911. S. McElveen then called 911 using her cell phone. The McElveens remained at the scene and spoke with the police once they arrived at the scene.

A maintenance worker at the apartment complex, Temestocles Sanchez (T. Sanchez), had been repairing a hole in the wall in building thirteen when he heard the gunshots. After hearing the gunshots, he looked out of the window and saw [Smalls] and Kave run into the building less than a minute after he heard the shots. T. Sanchez recognized [Smalls], and he also saw that the other individual had a partially exposed gun in his hoodie. [Smalls] and Kave began knocking on apartment doors. T. Sanchez went to report the incident to his supervisor, and they telephoned the police. [Smalls] and Kave gained entry into apartment 151, and they began talking with its occupants, Erica Sawyer and her cousin, Crystal Burden. Burden, Burden's mother, Maribel Rodriguez, and Burden's younger sister all lived in apartment 151. Once Burden's mother left for work and Burden's younger sister left for school in the morning, Burden and Sawyer were the only people in apartment 151 until [Smalls] and Kave arrived. Burden and Sawyer had not left the apartment all day. After [Smalls] and Kave arrived, they each removed their sneakers and their hoodies. Burden told [Smalls] and Kave to leave, but they remained. The police arrived at the scene and surrounded building thirteen; no one entered or exited the building, except for the police. The police obtained a master key from the manager of the apartment complex, secured the approval of the apartment residents and began knocking on doors looking for [Smalls] and Kave. Upon entering apartment 151, the police ordered its occupants to come out, and Sawyer and Burden exited a bedroom. An officer again ordered anyone else in the apartment to come out. [Smalls] and Kave came out of the bedroom from which Burden and Sawyer also exited. No one else was found in the apartment. The renter of the apartment, Maribel Rodriguez, arrived home, and the police obtained her permission to search the apartment. They found two hoodies, two pairs of men's sneakers and, in the back of the bedroom closet, a .380 semiautomatic handgun and a nine millimeter Glock handgun. In the cartridge of the Glock handgun were four Federal Cartridge Company (Federal) HydraShok brand nine millimeter bullets. The police also uncovered a black mask in a pocket of one of the hoodies and another black mask in one of [Smalls]'s pockets.

In the meantime, the police had arrived at the location of the shooting and attempted to tend to the unconscious victim. An ambulance was called, and it transported the victim to the hospital, where he was pronounced dead, never having regained consciousness. The paramedic explained that the victim had "bled . . . out right on the street. He lost most of his blood there." The medical examiner reported that the twenty-two year old victim had died as a result of a "[g]unshot wound to the lower

abdomen." The medical examiner retrieved one bullet from the victim's body, which, after cleaning and photographing it, she placed in a labeled container and then turned it over to the police. The bullet was a nine millimeter caliber, jacket hollow point, with a Hydra–Shok design.

While at the scene of the shooting, the police collected eight spent shell casings and one live round. Four of the shell casings were .380 caliber, as was the one live round. The remaining shell casings were nine millimeter. It was determined, to a reasonable degree of certainty, that the shell casings had come from the handguns that had been seized from apartment 151. The bullet that killed the victim also was consistent with one having been fired from the nine millimeter handgun that was recovered from apartment 151. None of the shell casings or the handguns contained fingerprints, and [Smalls] and Kave had no gunpowder residue on their hands.

Following a probable cause hearing, [Smalls] elected to be tried by a jury, and a trial ensued. At the close of the state's evidence, [Smalls] filed a motion for a judgment of acquittal, which the court denied. [Smalls] called no witnesses. The jury found [Smalls] guilty of murder and of carrying a pistol without a permit.

*Smalls*, 136 Conn. App. at 198-202 (footnotes omitted). Following his conviction, Smalls was sentenced to a total effective sentence of forty-five (45) years of imprisonment.[2] *Id.* at 202.

On direct appeal, Smalls claimed that the trial court improperly "(1) found that there was probable cause to support [his] prosecution . . . for causing the death of the victim, Edgar Sanchez, and (2) concluded that the evidence was sufficient to sustain [his] conviction for murder as either a principal or accessory." 136 Conn. App. at 198; Doc. 1, at 4. The Connecticut Appellate Court rejected both of Smalls's claims of error and affirmed the judgment of conviction. 136 Conn. App. at 203-10.

As to his first claim – *i.e.*, that the trial court improperly found that there was probable cause to support his prosecution for causing the death of the victim, Edgar Sanchez – the Connecticut Appellate Court held that, although the evidence did not establish whether Smalls or Kave fired the

---

[2] Smalls received forty-three (43) years of imprisonment for the murder charge and two (2) years of imprisonment for carrying a pistol without a permit.

fatal shot, it warranted a person of reasonable caution to believe that Smalls had murdered the victim and, therefore, amounted to probable cause. *Id.* at 209. The Court summarized:

> The defendant argues that although the evidence reasonably might "justify an inference that either the defendant or Kave fired the fatal shot" that killed the victim, "the only inference that can be derived from [the] facts is that there is a [50] percent possibility that the defendant fired the fatal shot.... And there is a [50] percent possibility [that] Kave fired the fatal shot." He argues that this is insufficient to support a finding of probable cause to try him for murder. We disagree with the defendant's assertion that probable cause requires more than a 50 percent likelihood, which essentially would amount to a preponderance of the evidence, that the defendant committed the crime, and we conclude that the evidence presented at the defendant's hearing in probable cause would warrant a person of reasonable caution to believe that the defendant had murdered the victim.

*Id.* at 208-09.

In support of his second claim that "the court improperly concluded that the evidence was sufficient to sustain the defendant's conviction for murder as either a principal or an accessory," Smalls argued that there was no evidence that he either touched the handgun from which the fatal shot was fired, or that he intentionally aided Kave in the commission of the murder, as required by Conn. Gen. Stat. § 53a-8(a).[3] *Id.* at 202-03.

The state countered that under the "concert of action doctrine," the evidence was sufficient to support Smalls's conviction for murder as a principal or as an accessory. *Id.* at 203. At oral argument, Smalls contended that the "concert of action" doctrine: "puts a gloss on § 53a-8(a) that

---

[3] Connecticut General Statutes § 53a-8(a) provides:

A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

is not supported by the statute's plain language," is not a rule of law, and is not binding on the appellate court. *Id.* at 203 n.4; Doc. 1, at 13.

Relying on the Connecticut Supreme Court's precedent in *State v. Delgado*, 247 Conn. 616 (1999), the Connecticut Appellate Court stated:

> "Whether a person who is present at the commission of a crime aids or abets its commission depends on the circumstances surrounding his presence there and his conduct while there.... Since under our law both principals and accessories are treated as principals ... if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [murder] charged or did some act [that] forms ... a part thereof ... then the convictions must stand.... Therefore, as we have stated in the past, the terms accessory and principal refer to the alternate means by which one substantive crime may be committed." (Citations omitted; internal quotation marks omitted.)

136 Conn. App. at 203-04 (quoting *State v. Delgado*, 247 Conn. 616, 622 (1999)).

Comparing the present case to *Delgado*, the appellate court agreed with the state that the jury reasonably could have found that, at the time Smalls was firing his gun at the victim, he was aware that Kave also was firing at the victim and, therefore, there was "sufficient concert of action between the defendant and [the other participant] to support the accessory allegation.... As such, there was sufficient evidence to support the jury's conclusion that the defendant had intentionally contributed to the victim's murder." *Id.* at 204 (quoting *Delgado,* 247 Conn. at 623). In other words, there was sufficient concert of action between Smalls and Kave to establish that Smalls intentionally aided in the commission of the murder. *Id.* The trial court's judgment of conviction was affirmed.[4]

---

[4] In so holding, the Connecticut Appellate Court stated that, in addition to Conn. Gen. Stat. § 53a-8(a), it was bound to also take into account the precedential "concert of action cases decided by [Connecticut's] Supreme Court," including *State v. Delgado*, 247 Conn. 616, 622 (1999). The appellate court explained:

> As an intermediate appellate court ... we are not at liberty to overrule, reevaluate or reexamine controlling precedent of our Supreme Court. *See Stuart v. Stuart*, 297

Smalls petitioned the Connecticut Supreme Court to review the Connecticut Appellate Court's decision. Doc. 1, at 4, 12. On the first page of the petition, he framed the issues for certification the same way he presented them for review by the appellate court:

I.      Whether The Evidence Was Insufficient To Support The Defendant's Conviction For Murder As Either A Principal Or An Accessory?

II.     Whether The Evidence Was Insufficient To Support The Trial Court's Finding That Probable Cause Existed That The Defendant Caused The Death Of Sanchez?

Doc. 1, at 12.

As to the first issue, the substance of his argument in support of certification was that the Connecticut Appellate Court, in affirming the judgment of conviction on sufficiency grounds, improperly applied the "concert of action" language from *Delgado* and its predecessor, *State v. Diaz*, 237 Conn. 518, 679 (1996). He argued that the appellate court's findings were inconsistent with accessorial liability principles and diluted the state's burden of proof. *See* Doc. 1, at 14-16. Smalls asserted that the concert of action language (1) is inconsistent with state precedent on accessorial liability, (2) is inconsistent with the clear language of § 53a-8(a), (3) wrongfully absolves the state of its burden to prove that another person committed the crime, (4) is inconsistent with the Second Circuit's decision in *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir. 1979), (5) wrongfully absolves the state of its burden to prove that the accused helped, supported or assisted the other

---

Conn. 26, 45–46, 996 A.2d 259 (2010) ( 'it is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by [its] precedent').

*State v. Smalls*, 136 Conn. App. 197, 203 n.4 (2012).

person in committing the crime, and (6) is only invoked when the state, as in this case, is unable to prove whether the accused or the other participant committed the crime. Doc. 1, at 14-16.

With respect to the second question presented for certification, Smalls argued that the appellate court improperly upheld the trial court's finding of probable cause because there was no direct evidence that Smalls fired the fatal shot, and "the only permissible inference based on the evidence was [that] either [Smalls] o[r] Kave killed the victim," which is insufficient to find probable cause. Doc. 1, at 18.[5]

The Connecticut Supreme Court granted Smalls's petition for certification, limited to the following issue: "Did the Appellate Court properly apply the concert of action doctrine*; see State v. Diaz*, 237 Conn. 518, 679 A.2d 902 (1996); in concluding that there was sufficient evidence to support the defendant's conviction for murder as either a principal or an accessory?" *State v. Smalls*, 306 Conn. 906 (2012). *See also* Doc. 1, at 20; Doc. 12-2. In his brief to the Supreme Court, Smalls reiterated his arguments that the concert of action doctrine is inconsistent with § 53a-8(a) and improperly dilutes the state's burden of proof. *See* Doc.12-3 ("Petitioner's Brief to the Supreme Court"), at 25-30. He interpreted the doctrine as requiring the state to prove that the accused "prepared for, and knowingly participated in, the murder," which is less burdensome than § 53a-8(a)'s requirement that the accused "intentionally aid[ed]" another person in committing the crime. *See id.,* at 30-31. He asserted that the evidence was insufficient to show that he committed the murder as a principal because there was no evidence that he fired the fatal shot. *Id.,* at 31. Moreover, he argued, the state could not convict him as an accessory because it could not prove that

---

[5] Smalls does not challenge the Connecticut Appellate Court's decision regarding the probable cause finding in his present federal Petition.

Kave fired the fatal shot and, therefore, that Smalls intentionally aided Kave in killing Sanchez. *Id.* Smalls also challenged the appellate court's conclusion that the evidence showed he was aware that Kave was firing at the victim. *See id.,* at 32.

In a *per curiam* opinion, the Supreme Court dismissed Smalls's appeal without substantive review of the issue presented. *State v. Smalls*, 312 Conn. 148 (2014) (filed on the case record as Doc.12-4). The Court held as follows: "After examining the entire record on appeal and considering the briefs and oral arguments of the parties, we have determined that the appeal in this case should be dismissed on the ground that certification was improvidently granted." *Id.* at 150. Put simply, upon additional review, the Connecticut Supreme Court dismissed the case summarily because it concluded that it never should have accepted it.[6]

On January 25, 2011, while his direct appeal was still pending, Smalls filed his first petition for writ of habeas corpus in state court. Doc. 12-7 ("First State Habeas Petition," App'x G to Respondent's Brief ). In that writ, Smalls claimed that his trial counsel, Eroll Vincent Skyers, was

---

[6] Pursuant to Rule 84-2, "Certification by the supreme court on petition by a party is not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor." Such grounds include:

> (1) Where the appellate court has decided a question of substance not theretofore determined by the supreme court or has decided it in a way probably not in accord with applicable decisions of the supreme court.
> (2) Where the decision under review is in conflict with other decisions of the appellate court.
> (3) Where the appellate court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by any other court, as to call for an exercise of the supreme court's supervision.
> (4) Where a question of great public importance is involved.
> (5) Where the judges of the appellate panel are divided in their decision or, though concurring in the result, are unable to agree upon a common ground of decision.

Conn. Practice Book § 84-2.

ineffective during his criminal trial because Skyers failed to: call an expert witness on Smalls's behalf, properly cross-examine the state's witnesses, object to the amended information, or fully investigate the case. *See id.,* at 5. Smalls later withdrew this petition on June 4, 2013, before the habeas trial could be held. *Id.*, at 8; Doc. 1, at 22-23.

Smalls filed his second state habeas petition on July 15, 2014, approximately one month after the Connecticut Supreme Court dismissed his direct appeal. Doc. 12-8 ("Second State Habeas Petition," App'x H to Respondent's Brief). In support of his second petition, Smalls argued that: (1) the "long form information" upon which he was convicted did not properly state the elements of accessorial liability, (2) his trial counsel Skyers was inadequately prepared for cross examination of witnesses because he failed to investigate and interview said witnesses prior to their testimony; (3) Skyers also, *inter alia*, failed to move for a bill of particulars, a dismissal of the information, and/or a new trial; (3) appellate counsel, Raymond L. Durelli performed in a "deficient" manner because he failed to challenge Smalls's conviction for carrying a firearm without a permit; and (4) Smalls's confinement violated his Eighth Amendment protection against cruel and unusual punishment because "he is being held without any meaningful opportunity to obtain release for a crim[e] committed as a juvenile." *Id.* at 7-10. Smalls withdrew his second petition on March 23, 2017, less than two weeks before it was scheduled for trial. *Id.* at 11; Doc. 1, at 25, 27.

Approximately seven months after withdrawing this second state habeas action, Smalls filed the instant federal petition for writ of habeas corpus (herein "Petition"). Doc. 1, at 1.

## II. STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf

of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'"). Because federal habeas relief may only be obtained for a violation of federal law, it "does not lie for errors of state law." *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted). Therefore, a claim that a state conviction was obtained in violation of state law is not cognizable in this Court.

Moreover, as the Second Circuit stated in *Lewis v. Connecticut Commissioner of Correction*, 790 F.3d 109 (2d Cir. 2015):

> "[F]ederal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

790 F.3d at 117.

In determining whether a state conviction violates federal law, Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotations omitted). This Court cannot grant a petition for writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In sum, "in order to satisfy § 2254(d)'s substantive predicates and merit federal review" of the petitioner's claims for habeas relief, he must establish either that the state court's decision: "(1) contravened clearly established federal law, as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts," *Lewis*, 790 F.3d at 121. This standard for obtaining federal habeas relief is "difficult to meet," *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)), and "highly deferential" to state court rulings,"stop[ping] short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings," *Harrington,* 562 U.S. at 102, 105.

"Clearly established federal law, as determined by the Supreme Court," refers to the "holdings, as opposed to the *dicta*, of [the Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). *See also Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" clearly established federal law when it applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court unreasonably applies Supreme Court law when it has correctly identified the law but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle

clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008). Moreover, "an unreasonable application of federal law is different from an incorrect application of federal law." *Eze v. Senkowski*, 321 F.3d 110, 124-25 (2d Cir. 2003) (quoting *Williams*, 529 U.S. at 410). Specifically, the state court's application of clearly established federal law must be "objectively unreasonable," a substantially higher standard. *Id.*; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, a habeas petitioner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington*, 562 U.S. at 103. *Accord Metrish*, 569 U.S. at 358. *See also Williams*, 529 U.S. at 389 ("state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated").

When reviewing a habeas petition, the Court presumes that the factual determinations of the state court are correct, 28 U.S.C. § 2254(e)(1). *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings . . . are presumed correct . . . ."). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence," 28 U.S.C. § 2254(e)(1). Also, the Court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

In sum, when reviewing an application for a writ of habeas corpus by a state prisoner, a district court must ask three questions to determine whether habeas relief should be granted: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly established' when the state court ruled? (2) If so, was the state court's decision 'contrary to' that established

Supreme Court precedent? (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2000), *cert. denied*, 534 U.S. 924 (2001). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

## III. ANALYSIS

### A. Summary of Petitioner's and Respondents' Main Arguments

#### 1. Smalls's Asserted Basis for Habeas Relief

Smalls states only one ground in support of his § 2254 petition: "The evidence was insufficient to support [his] conviction for murder as either a principal or an accessory; and that application of the 'concert of action doctrine' dilutes the state's burden of proof, [in violation of the] Fourteenth Amendment [D]ue [P]rocess [C]lause." Doc. 1, at 30. Petitioner argues that the state presented insufficient evidence that he caused the victim's death as a principal or "intentionally aided" Kave in causing the victim's death and that the concert of action doctrine "is inconsistent with established federal law governing accessor[ial] [liability]." *Id.*, at 31. In support of his argument, Smalls cites *Jackson v. Virginia*, 443 U.S. 307 (1979), as the proper standard of review for sufficiency of the evidence claims, which according to Smalls the state courts failed to apply properly. *See* Doc. 1, at 36. He also cites *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir. 1979), for the proposition that another person's commission of an offense is a condition precedent to establishing accessorial liability. Doc. 1, at 38-39.

#### 2. Opposition of Faneuff and Molden

Respondents Faneuff and Molden oppose the Petition on two bases. First, they assert that Smalls's "federal constitutional claim is unexhausted." Doc. 12 (Respondents' Brief), at 17. In

particular, Smalls has failed to present his claim under the Fourteenth Amendment and *Jackson v. Virginia*, 443 U.S. 307 (1979), to Connecticut courts. *Id.* In fact, his petition for certification to the Connecticut Supreme Court made no mention of a federal claim, but was rather directed to "reexamination" of the Connecticut Supreme Court's precedents. *Id.* That petition was thus limited to the Connecticut Appellate Court's application of the "concert of action" doctrine. *Id.*, at 17-18.

In particular, Smalls's petition for certification urged the Connecticut Supreme Court to grant review because the "concert of action" language of the Connecticut Appellate Court "eviscerates essential elements" set forth in, and/or is inconsistent with, the plain language of Connecticut's accessory statute. *Id.*, at 18. Moreover, his petition pointed to language in *State v. Montanez*, 277 Conn. 735, 756 (2006), construing Conn. Gen. Stat. § 53a-8, which states: "The proposition that another person's commission of an offense is a condition precedent to the imposition of accessorial liability is consistent with federal law." *Id.* at 757-58 (citing *United States v. Ruffin*, 613 F.2d 408, 412 (2d Cir. 1979)).

Smalls's citation to *Ruffin* is his only reference to federal law in his state petition for certification. That case construed 18 U.S.C. § 2, a federal statutory counterpart to § 53a-8, did not state any rule of constitutional law, and is Circuit Court precedent, as opposed to "Supreme Court law," *Parker v. Matthews*, 567 U.S. 37, 48 (2012). Nothing in Smalls's petition for certification alerted the Connecticut Supreme Court to the argument he now raises, addressing *Jackson* and the Fourteenth Amendment. As Respondents point out, Petitioner's "submissions to Connecticut courts were devoid of any federal constitutional analysis." Doc. 12, at 19.

Second, and alternatively, Respondents argue that Smalls's present claim on the merits fails because "the resolution of the petitioner's case in Connecticut courts is neither inconsistent with nor

an unreasonable application of federal law." *Id.*, at 20.  In particular,  the state courts' decisions on the sufficiency of the evidence supporting his conviction were based on a reasonable application of clearly established federal law, and the Connecticut Appellate Court's application of the concert of action doctrine did not dilute the state's burden of proof. *Id.,* at 20-25.

**B.  Whether Petitioner Exhausted His Federal Constitutional Claim in State Court**

To determine whether the claim in Smalls's present habeas Petition, regarding federal constitutional law, was exhausted, the Court must apply the general standard set forth in *Baldwin v. Reese*, 541 U.S. 27 (2004).  In that opinion Justice Breyer wrote:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State  the " 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and internal quotation marks omitted).

In his reply, Smalls argues that he adequately presented his claim regarding sufficiency of the evidence to the Connecticut Supreme Court through his petition for certification.  Doc. 13 (Petitioner's Reply Brief), at 1, 5-6.  He insists that his petition to that court "did in fact say that the concert of action doctrine as applyed [sic] is inconsistent with Federal Law governing accessorial liability." *Id.*, at 5.  He argues that "he did in fact show that Connecticut's accessory liability as applied to him violates clearly established federal law, and that the state court unreasonably applied that law." *Id.*, at 7.

### *1.       Rule of Exhaustion*

A prerequisite to federal habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of

available state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The Second Circuit requires the district court to conduct a two-part inquiry to determine exhaustion. *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005). "First, a federal court must examine whether applicable state court remedies remain available to the petitioner." *Id.* In this regard, the petitioner "need not have invoked every possible avenue of state court review." *Id.* Rather,"'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 845). A "complete round" requires the petitioner to present his claim to the highest court of the state and apprise that court of "both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition." *Id.* (citations omitted).

"Second, . . . the federal court must assess whether the petitioner 'properly exhausted those [state] remedies, *i.e.*, whether [petitioner] has fairly presented his [or her] claims to the state courts,' such that the state court had a fair opportunity to act." *Id.* (citing *O'Sullivan*, 526 U.S. at 845). This inquiry "embodies the concept of procedural default." *Id.* The procedural default doctrine "ensur[es] that state courts receive a legitimate opportunity to pass on a petitioner's federal claims and that federal courts respect the state courts' ability to correct their own mistakes." *Id.* at 73. Thus, to properly exhaust a federal habeas claim in state court, the petitioner must put the state courts on notice that they are deciding *a federal constitutional claim*. *Petrucelli v. Serrano*, 735 F.2d 684, 687-88 (2d Cir. 1984) (emphasis added). The exhaustion requirement "expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions," state and federal. *Id.* at 687 (citation and internal quotation marks omitted).

For purposes of exhaustion, adequate notice to the state court includes:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 688 (quoting *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)). Requiring such notice is not unreasonably burdensome on state prisoners. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

Failure to exhaust state court remedies may be excused only if "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*); *see also* 28 U.S.C. § 2254(b)(1)(B). Furthermore, the petitioner may not simply wait until appellate remedies are no longer available and then argue that the claim is exhausted. *See Galdamez*, 394 F.3d at 72-74.

### 2.    *Lack of Exhaustion*

The Respondents do not dispute that Smalls fairly presented his "sufficiency of the evidence" claim, including the application of the "concert of action" doctrine to the facts of the case, to the Connecticut Appellate Court, which affirmed the judgment of conviction. They argue, however, that Smalls's petition to the Connecticut Supreme Court for certification to review the appellate court's decision and his supporting brief failed to put the supreme court on notice that he sought determination of a federal constitutional claim. *See* Doc. 12, at 17-19.

Respondents correctly state that Smalls's petition for certification and supporting brief focused on the appellate court's interpretation of § 53a-8(a) and application of the "concert of action" doctrine in finding Smalls' accessorial liability for the murder. As the "basis for certification," he wrote: "The Appellate Court's resolution of the issues discussed herein is not in complete accord with the decisions of this Court or other Appellate Court decisions and departs from the accepted and usual course of judicial proceedings . . . ." Doc. 1, at 12. He went on to frame the first issue as whether his conviction for murder was based on "insufficient evidence to prove beyond a reasonable doubt that the defendant did shoot and cause the death of Sanchez or intentionally aided James Kave in causing the death of Sanchez." *Id.,* at 13. He faulted the appellate court for its reliance on the "concert of action" language in the state decision, *State v. Delgado*, 247 Conn. 616 (1999), and argued that it was "inconsistent with hundreds of Connecticut cases on accessorial liability," Doc. 1*,* at 14. Moreover, he asserted that if the Connecticut Supreme Court "grants [his] petition for certification with respect to this issue, it is in essence granting certification to examine its decision in *State v. Diaz*, 237 Conn. 518, 521-24 (1996), the case relied on in *State v. Delgado*, . . . for the 'concert of action' language." In other words, he requested a re-examination of state law precedent.[7]

Smalls also argued that "concert of action" language used by the appellate court, was "inconsistent with the clear and unambiguous language of § 53a-8," which he believed required the state to "prove that a crime has been committed and another person committed it." *Id.*, at 14-15.

_____

[7] Smalls acknowledges in his Supreme Court brief that, if the appellate court's interpretation of § 53a-8(a) and application of the "concert of action" doctrine are correct, then the evidence is sufficient to support his conviction. *See* Doc. 12-3 (Smalls's Brief to the Connecticut Supreme Court, Respondents' App'x. C), at 25. Smalls states that if the Appellate Court's statement of the concert of action doctrine was accurate, "the defendant acknowledges the Appellate Court properly concluded that there was sufficient evidence to support the defendant's conviction for murder as an accessory." Doc. 12-3, at 25.

In his brief, Smalls made reference to *United States v. Ruffin*, 613 F.2d 408 (2d Cir. 1979), the sole federal case he cited in support of his claim. He described *Ruffin* as stating that "a defendant charged with aiding and abetting the commission of a crime by another cannot be convicted in the absence of proof that the crime was actually committed." *Id.*, at 15. *Ruffin,* however, principally involved statutory construction so he included no analysis of a constitutional issue with respect to that case. Rather, he relied on *Ruffin* solely for the proposition that accessorial liability under federal statute requires a finding that another participant committed the crime.[8] He thus contrasted *Ruffin* with the appellate court's alleged mis-interpretation of the "concert of action doctrine," requiring only that the accused prepared for, and knowingly participated in, the commission of the offense.[9] *See* Doc. 1, at 15.

_____

[8] Smalls's reliance on *Ruffin* does not support his contention that the state courts' decisions fail to comply with federal law. *Ruffin* involved an issue of whether the defendant could be convicted and punished as a principal offender under a federal accessorial liability statute, 18 U.S.C. § 2(b). In that case, the Second Circuit held that the defendant could be convicted of fraud in obtaining federal financing based on evidence that he caused the commission of the crime by another agent.

The Second Circuit in *Ruffin* also held that "[i]t is equally clear that under 18 U.S.C. § 2(b) one who Causes another to commit a criminal act may be found guilty as a principal *even though the agent who committed the act is innocent or acquitted*. 613 F.2d at 412 (citing *United States v. Wiseman*, 445 F.2d 792, 794-95 (2d Cir. 1971)) (emphasis added).

[9] Petitioner's assertion that another person must be known and convicted before accessorial liability may be imposed conflicts directly with the language of Conn. Gen. Stat. § 53a-9. That statute states:

> In any prosecution for an offense in which the criminal liability of the defendant is based upon the conduct of another person under section 53a-8 it shall not be a defense that: (1) Such other person is not guilty of the offense in question because of lack of criminal responsibility or . . . (2) such other person has not been prosecuted for or convicted of any offense based upon the conduct in question, or has been acquitted thereof, or has legal immunity from prosecution therefor . . . .

Conn. Gen. Stat. § 53a-9.

Smalls framed his issue for review as a challenge to the sufficiency of the evidence.  Doc.

1, at 12.  Although he did not cite to *Jackson* or any United States Supreme Court case, he set forth

the same standard of review for sufficiency of the evidence claims used by federal courts:

> When reviewing a defendant's claim of evidentiary insufficiency, a reviewing court applies a two-part test.  First, the court construes the evidence in the light most favorable to sustaining the verdict.  Second, the court determines whether the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.

Doc. 12-3, at 16  (citing *State v. Davis*, 283 Conn. 280, 329 (2007)).[10]  He also cited a state law case

for the holding that  "[t]he due process clause of the fourteenth amendment protects an accused

against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute

the crime with which he is charged " *State v. Gabriel*, 192 Conn. 405,413-14 (1984).

The issue of whether Smalls exhausted his state court remedies thus turns on whether his

questions presented for review and brief discussion of the sufficiency of the evidence standard was

enough to put the Connecticut Supreme Court on notice of a federal Fourteenth Amendment due

process claim.  Courts in this Circuit have rejected claims on exhaustion grounds based on similar

facts.  *See Mills v. Miller*, No. 17-CV-286 (MAT), 2018 WL 2739436, *6 (W.D.N.Y. Jun. 7, 2018)

(petitioner failed to alert state appellate court that sufficiency of evidence claim was based on federal

constitution when claim was supported by New York cases and statutes and focused on state law rule

requiring corroboration of accomplice testimony); *Jackson v. McClellan*, No. 92-Civ-7212 (JFK),

---

[10] The state case upon which Smalls relies, *State v. Davis*, 283 Conn. 280 (2007), cites to *Jackson* but only for purposes of the defendant's instructional error claim, not as binding precedent for deciding whether the evidence is sufficient to support a conviction. *See id.* at 334. Nevertheless, Smalls's explanation of the sufficiency of the evidence standard comports with United States Supreme Court precedent, and the respondents do not argue otherwise. *See Jackson*, 443 U.S. at 319.

(S.D.N.Y. Mar. 4, 1994) (mere assertion that petitioner was denied "right to fair trial" under state statute, with supporting state cases, failed to constitute adequate notice to state court of a federal constitutional claim) (citing *Petrucelli*, 735 F.2d at 688).

Here, Smalls limited his claim before the Connecticut Supreme Court to the proper construction of § 53a-8(a), a Connecticut statute, and whether the Connecticut Appellate Court's application of the "concert of action doctrine" was consistent with that construction.[11] The key case cited in support of certification was a Connecticut state case, *State v. Diaz*, 237 Conn. 518 (1996).[12] Although Plaintiff labeled his claim as one regarding sufficiency of the evidence and briefly addressed the sufficiency standard, he did not analyze his claim in light of the well-established federal jurisprudence on sufficiency of the evidence in either his petition for certification or supporting brief to the Connecticut Supreme Court.

---

[11] As the Connecticut Supreme Court summarized, quoting Petitioner's statement of the issue for certification:

> We thereafter granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly apply the concert of action doctrine; *see State v. Diaz*, 237 Conn. 518, 679 A.2d 902 (1996); in concluding that there was sufficient evidence to support the defendant's conviction for murder as either a principal or an accessory?" *State v. Smalls*, 306 Conn. 906, 52 A.3d 732 (2012).

*State v. Smalls*, 312 Conn. 148, 149 (2014).

[12] On page 18 of his brief, Petitioner briefly mentioned two federal cases, *United States v. Ruffin*, 613 F.2d 408 (2d Cir. 1979), and *Meredith v. United States*, 238 F.3d 5335, 542 (4th Cir. 1956), discussed by the Connecticut Supreme Court in *State v. Montanez*, 277 Conn. 735, 756 (2006), as examples where under a federal "aiding and abetting" statute, the courts had found the commission of a crime to be a condition precedent to the imposition of accessorial liability. However, there was no constitutional analysis in either the Petitioner's brief, or in any of the cited federal cases. There was also no argument that the federal statute, as applied to federal crimes, had any bearing on the Petitioner's state case.

Smalls did not invoke "pertinent federal cases employing constitutional analysis," nor did he present "state cases employing constitutional analysis in like fact situations." *Carvajal v. Artus*, 633 F.3d 95, 107 (2d Cir. 2011) (citing *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)). Rather, he requested the Connecticut Supreme Court to reexamine the appellate court's determinations on state-law questions, namely the interpretation of a state statute under state law. While Smalls may have considered that interpretation as unconstitutional, he did not frame his argument as a constitutional one. In consequence, upon a review of his petition and brief to the Connecticut Supreme Court, this Court finds that Smalls failed to adequately apprise the Connecticut Supreme Court that his claim addressed federal due process. *See, e.g.*, *Ponnapula v. Spitzer*, 297 F.3d 172, 181 (2d Cir. 2002) ("Although Ponnapula fashions this claim as a challenge under [*In re*] *Winship*, [397 U.S. 358 (1970),] we conclude that it provides no basis for federal habeas relief because it rests solely on a question of state law.") (citations omitted).[13] The Court will deny habeas relief due to Petitioner's failure to exhaust state court remedies by failing to adequately place the Connecticut Supreme Court on fair notice of his constitutional claim in his request for certification.

## C.    Review of Petitioner's Claim on the Merits

### *1.    Proof of Guilt Beyond a Reasonable Doubt*

Alternatively, because the issue of exhaustion may arguably be debated by reasonable minds, the Court now reviews the merits of Smalls's claim for habeas relief under *Jackson v. Virginia*, 443 U.S. 307 (1979), to determine whether the resolution of his case in the Connecticut courts was

---

[13]    Under *Winship*, the United States Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364.

inconsistent with, or an unreasonable application of, federal law. Petitioner argues that his constitutional rights were violated in two ways. First, he argues that the evidence at his state trial was insufficient to find him guilty as a principal or as an accessory. Second, he claims that the application of the "concert of action" doctrine diluted the State's burden of proof.

As to his first claim, the Connecticut courts' finding that Smalls was guilty as a principal *or* an accessory is not inconsistent with clearly established federal law. The Fourteenth Amendment guarantees that a criminal conviction be supported by sufficient proof, "defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 U.S. at 316 (citing *In re Winship*, 379 U.S. 358 (1970)). The applicable standard is whether from the record, evidence adduced at trial, viewed in the light most favorable to sustaining the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[14] *Jackson*, 443 U.S. at 324. Here, as in *Jackson*, "[a] review of the record in the light most favorable to the prosecution convinces [the Court] that a rational factfinder could readily have found the petitioner guilty beyond a reasonable doubt of . . . murder." *Id.*

"When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999) (quoting *Ponnapula* 297 F.3d at 179). In the case at bar, Smalls was convicted of murder pursuant to Connecticut General Statutes §§ 53a-54a and 53a-8. Section 53a-54a states,

---

[14] Also, for purposes of habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id. See also Rice.* 546 U.S. at 338–39 (noting that "State-court factual findings ... are presumed correct . . .").

in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such a person or of a third person . . . ."  Section 53a-8(a) provides that "[a] person, acting with the mental state required for the commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

With respect to Conn. Gen. Stat. § 53a-8, Connecticut law "is clear that '[t]here is no such crime as 'being an accessory.' " *State v. Baker*, 195 Conn. 598, 608 (1985).  Therefore, when a defendant is charged with a substantive offense, "[t]he accessory statute merely provides alternate means by which a substantive crime may be committed." *Id.*  Connecticut thus "long ago adopted the rule that there is no practical significance in being labeled an 'accessory' or a 'principal' for the purpose of determining criminal responsibility." *State v. Van Harris*, 198 Conn. 158, 164 (1985) (citing Conn. Gen. Stat. tit. XX, c. XIII, part X (1875 Rev.) and *State v. Hamlin*, 47 Conn. 95, 118 (1879)).[15]

---

[15]  From his filings in this Court, as well as his brief before the Connecticut Supreme Court, it would appear that Smalls is under the mis-impression that he cannot be guilty as an "accessory" unless a guilty second party has been identified.  However, the Connecticut Supreme Court plainly rejected such a notion in *State v. Van Harris*, 198 Conn. 158, 165-66 (1985):

> The defendant argues that someone must be charged as aiding the robbery in the capacity as a "principal" before anyone else can be charged with aiding the robbery as an "accessory" under General Statutes § 53a–8. This argument is without merit. The legislature would not have used the verb "aided" if it wanted to describe the "other person" in the statute as a "principal" party to the crime. . . .  The legislature clearly intended that any person aiding in the commission of the crime be punished for that crime regardless of the label or the number of accomplices.

198 Conn. at 165-66.

In Connecticut, under § 53a-8(a), "in order for the defendant to be convicted of murder under an accessory theory of liability, the state [is] required to prove beyond a reasonable doubt that the defendant (1) intended to aid [another] in killing the victim and (2) intended to kill the victim." *State v. Delgado,* 247 Conn. 616, 621-22 (1999). This was the relevant law at the time of Petitioner's state court conviction, and Connecticut courts continue to interpret § 53a-8(a) to require this "dual intent." *See Cator v. Comm'r of Correction*, 181 Conn. App. 167, 194-95 (2018) ("[T]o establish the petitioner's guilt with respect to the offense of murder as an accessory under §§ 53a–54a and 53a–8 (a), the state was required to prove that: (1) a murder was committed; . . . (2) the petitioner had the intent to cause the death of the victim;. . . and (3) the petitioner "solicit[ed], request[ed], command[ed], importune[ed] or intentionally aid[ed]" in the commission of the murder."). Specifically*,* "a conviction under § 53a–8 requires [the state to prove the petitioner's] dual intent, [first], that the accessory have the intent to aid the principal and [second] that in so aiding he intend to commit the offense with which he is charged." *Cator,* 181 Conn. App. at 195 (quoting *State v. Danforth*, 315 Conn. 518, 529 (2015)).[16]

Therefore, in order for Smalls to be convicted of murder, the jury had to find that he either intended to kill the victim and did kill him, or solicited, requested, commanded, importuned or intentionally aided Kave in killing the victim. Under §§ 53a-54a(a) and 53a-8(a) and the facts in this case, viewing the evidence in the light most favorable to sustaining the verdict, a rational juror could have found that Smalls was guilty beyond a reasonable doubt of intentionally aiding Kave in

---

[16] *See also State v. Juarez*, 179 Conn. App. 588, 597 (2018) ("'Intent to cause the death of a person is an element of the crime [of murder] and must be proved beyond a reasonable doubt . . . . Intent may, however, be inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom . . . .'").

committing Sanchez's murder.

According to the factual record at trial, on the evening of March 22, 2007, Kave and Smalls dressed in dark hoodies and masks, followed the victim, Edgar Sanchez, on foot and then together "fired several shots at the victim."[17] 136 Conn. App. at 199. A witness named "Gibson turned and saw both [Smalls] and Kave firing handguns" at the same time and then "[Smalls] and Kave fled the scene." *Id.* They ran to Apartment 151 of the Monterey Village housing project, in Norwalk, Connecticut, where they were later apprehended.

Moreover, after hearing gunfire, eyewitness twin sisters Tracie and Stace McElveen "saw two males wearing hoodies run from Grove Street and between buildings twelve and thirteen of the apartment complex, with their hoods clenched tight around their faces." *Id.* "T. McElveen then saw the men run into building thirteen of the apartment complex." *Id.*

With respect to corroboration, after hearing the gunshots, maintenance worker Temestocles Sanchez "looked out of the window [of building 13] and saw [Smalls] and Kave run into the building less than a minute after he heard the shots." *Id.* at 200. T. Sanchez "recognized the defendant [Smalls]; and he also saw that the other individual [Kave] had a partially exposed gun in his hoodie." *Id.* Smalls and Kave then entered Apartment 151, despite being asked to leave by its occupants, and "removed their sneakers and hoodies." *Id.*

Later, when the police searched Apartment 151, "defendant [Smalls] and Kave came out of the bedroom." *Id.* at 201. In that bedroom, the police "found two hoodies, two pairs of men's

---

[17] Smalls cannot reasonably claim he was unaware of Kave's actions in shooting at Sanchez. They stood together and shot their weapons at the same time. The noise of the shooting was heard by multiple witnesses in the area of the apartment complex. Moreover, the shooters fled the scene afterward and hid together in the apartment where the police later apprehended them. In short, Smalls and Kave were indisputably aware of each other's actions on that evening.

sneakers and, in the back of the bedroom closet, a .380 semiautomatic handgun and a nine millimeter Glock handgun." *Id.* "In the cartridge of the Glock handgun were four Federal Cartridge Company (Federal) HydraShok brand nine millimeter bullets. " *Id.* " The police also uncovered a black mask in a pocket of one of the hoodies and another black mask in one of [Smalls]'s pockets." *Id.*

With respect to the fatal shot, the evidence showed:

While at the scene of the shooting, the police collected eight spent shell casings and one live round. Four of the shell casings were .380 caliber, as was the one live round. The remaining shell casings were nine millimeter. It was determined, to a reasonable degree of certainty, that the shell casings had come from the handguns that had been seized from apartment 151. The bullet that killed the victim also was consistent with one having been fired from the nine millimeter handgun that was recovered from apartment 151.

*Id.* at 202

It may be acknowledged that the evidence did not indicate whether it was Smalls or Kave who fired the particular bullet that caused the victim's death. However, the destruction is not relevant under governing Connecticut law. The Connecticut Appellate Court said in *Gamble v. Commissioner of Correction*, 179 Conn. App. 285 (2018):

Under a concert of action theory, it is immaterial who fired the fatal shot; what is material is whether the evidence shows that the petitioner acted with others to bring about the death of the victim. "[A] showing of concert of action between a defendant and [others] can provide a sufficient basis for accessorial liability." *State v. Ashe*, 74 Conn. App. 511, 518, 519, 812 A.2d 194 [(2003)](evidence that defendant acted in concert with others with intent to kill rival gang members sufficient to support murder conviction under accessorial theory of liability), *cert. denied*, 262 Conn. 949, 817 A.2d 108 (2003); *see also State v. Diaz*, 237 Conn. 518, 544, 679 A.2d 902 (1996) ("Although the evidence did not clearly demonstrate which of the perpetrators actually fired the shot that fatally injured [the victim], the evidence did establish that the defendant and his companions together prepared and readied themselves for the ambush ... [and] fir[ed] repeatedly into the vehicle with the intent to kill one or more of the passengers.... [Thus, the evidence] show[ed] sufficient concert of action between the defendant and his companion[s] to support ... the accessory allegation ...." [Internal quotation marks omitted.] ).

179 Conn. App. at 295. As in this case, "the jury did not need to determine who fired the fatal shot in order to find the petitioner guilty of [murder] under an accessorial theory of liability." *Id.* at 297.

Here, it was reasonable to infer that Petitioner intended to cause the death of the victim and that he intended to aid Kave in committing this murder.[18] Together Smalls and Kave dressed in dark hoodies with masks (to hide their identities), followed the victim on foot, and then fired contemporaneously at the victim. The fatal shot came from one of their two guns. The bullet that killed the victim was a nine millimeter slug, shot from the Glock that was one of the two guns found by the police in Apartment 151 where they found Smalls and Kave in hiding. *Id.*. at 201-03. In fact, as described *supra*, the gun was located in the closet of the bedroom from which Smalls and Kave emerged. *Id.* at 201. Under Connecticut law, use of a deadly weapon provides adequate grounds for the jury to find that the defendant intended to kill, supporting a murder conviction. *State v. Otto*, 305 Conn. 51, 66-67 (2012) ("Intent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and *the events leading to and*

---

[18] In *State v. Bennett*, 307 Conn. 758 (2013), reviewing Connecticut appellate cases in which accessorial liability for murder was properly found, the Connecticut Supreme Court stated:

> In some cases, the defendant participated in the killing by inflicting, or attempting to inflict, harm on the victim while the principal inflicted the fatal injury, or the evidence was unclear as to whether the defendant actually inflicted the fatal injury. . . . In cases lacking such proof, the defendant otherwise actively participated in the murder through acts beneficial to the principal . . . .

307 Conn. at 768-69. Here, the two shooters both actively participated in the effort to kill the victim – they fired contemporaneously at him. They both dressed to commit this crime in an attempt to hide their identities. They opened fire at the same time, fled together, hid their clothing and weapons together, and were apprehended together. It is clear from the evidence that they intended to assist one another in committing this crime.

Moreover, there was no indication that Petitioner was present "as an inactive companion," engaged in "passive acquiescence," or did "innocent acts which may [have] in fact aid[ed] the one who commit[ted] the crime." *Bennett*, 307 Conn. at 770.

*immediately following the death....*) (emphasis added).

In the case at bar, there was sufficient evidence to support a finding of intent to murder. As in *Jackson*, "[t]he petitioner's calculated behavior both before and after the killing demonstrated that he was fully capable of committing premeditated murder." 305 U.S. at 325. Both Smalls and Kave approached the victim together, following him on foot, dressed in masks and hooded garments to conceal their identities and weapons. They faced the victim directly and simultaneously fired multiple shots at him. After the victim was mortally wounded and fell, they ran from the scene and hid in an apartment. Such calculated behavior supports the jury's conclusion that Smalls, whether as principal or accessory, intended to kill Sanchez.

In addition, the fact that Smalls fled the scene, instead of rendering assistance to the victim or calling for medical help, supports a finding that he intended that the victim die. He and Kave ran up to Apartment 151 and secluded themselves in a bedroom until discovered by the police. They made no effort to either render or call for medical assistance. The Connecticut Supreme Court has stated that "it can be inferred that, if the defendant has caused a grievous wound that could cause the victim's death if not treated promptly, the failure to summon that treatment is consistent with an antecedent intent to cause death." *State v. Sivri*, 231 Conn. 115, 129 (1994). *See also State v. Francis*, 228 Conn. 118, 128-29 (1993) (evidence that defendant immediately left the scene following stabbing and did not render assistance to the victim was sufficient for the jury to infer defendant's intent to kill him); *State v. Bennett*, 307 Conn. 758, 766 (2013) ("[T]he defendant's state of mind at the time of the shooting may be proven by his conduct before, during and after the shooting. Such conduct yields facts and inferences that demonstrate a pattern of behavior and attitude toward the victim by the defendant that is probative of the defendant's mental state.") (citation

omitted).

Under these circumstances, if one applies the rule in *Jackson v. Virginia*, 443 U.S. 307 (1979), it is clear that the conviction, based on a finding of Petitioner's guilt, is neither contrary to, nor an unreasonable application of, clearly established federal law on "the sufficiency of the evidence."[19] Specifically, the factual record at Petitioner's trial was amply sufficient for the jury, as rational factfinders, to find "proof of guilt beyond a reasonable doubt" that Petitioner committed the crime upon which he was convicted. 443 U.S. at 315. Accordingly, there was no Fourteenth Amendment due process violation for insufficient evidence.

### 2. *"Concert of Action" Language - State's Burden of Proof*

Petitioner's second argument regarding application of the elements of Conn. Gen. Stat. § 53a-8 is based on the premise that when the Connecticut Appellate Court used the words "concert of action," it was invoking a formal doctrine that "diluted" the State's burden of proof, thereby implicating his Fourteenth Amendment right to due process. However, the appellate court employed the phrase "concert of action" to describe the contemporaneous actions of the perpetrators that reasonably supported a finding of accessorial liability. As Respondents suggest, "concert of action" in this context was "synonymous with 'contemporaneous' or 'synchronized' action," Doc. 12, at 24; and it is reasonable to conclude that the jury, as factfinders, found from the evidence at trial that Smalls and Kave acted in concert – contemporaneously, as part of "the same transaction" – as they shot at Sanchez.

---

[19] As set forth *supra*, *Jackson* held that the Fourteenth Amendment guarantees that a criminal conviction will be supported by sufficient proof, which is "defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson*, 443 U.S. at 316 (citing *In re Winship*, 397 U.S. 358 (1970)).

"Concert of action," as a phrase, did not "dilute" the burden of proof with respect to Conn. Gen. Stat. § 53a-8, which does not require proof of another specific person's commission of an offense to impose accessorial liability. Under that provision, Connecticut requires that there must be a crime committed by someone, but "[t]he prosecution of an accused accessory may proceed when the evidence is factually insufficient to establish who committed the crime." *State v. Santiago*, 305 Conn. 101, 186 n.82 (2012), *supplemented on other grounds on reconsideration*, 318 Conn. 1 (2015). *See also State v. Garner*, 270 Conn. 458, 481 (2004) (rejecting defendant's argument that Connecticut case law holds that "the conviction of an accessory is prohibited when the principal has been acquitted in a separate trial"). Here, Petitioner does not assert that Sanchez's death was not the result of crime; he also does not claim that anyone other than he and Kave did the shooting. He merely argues that no murder *can be proven* because the jury cannot determine whether it was his bullet or Kave's that actually killed Sanchez. In other words, Smalls believes that unless Kave is proven to have committed the murder of Sanchez, Smalls cannot be convicted as an accessory.[20]

This argument lacks merit. The accessory statute was designed for just such a situation. Where perpetrators act in concert, they are both deemed guilty of having committed the crime. The label of "principal" or "accessory" is irrelevant. Moreover, one perpetrator need not be convicted for the other to be convicted. *See, e.g., Garner*, 270 Conn. at 481 (rejecting that state case law "stands for the principle that the conviction of an accessory is prohibited when the principal has been acquitted in a separate trial").

The Connecticut Appellate Court's finding that, pursuant to state law, there was sufficient

---

[20] If Petitioner is actually claiming that the shooting death of Edgar Sanchez was not a murder, that flies in the face of all of the evidence produced at his trial. He and Kave intentionally shot at Sanchez, who fell to the ground, bled out at the scene, and was later pronounced dead.

coordinated conduct between Smalls and Kave to find Smalls guilty as either a principal or an

accessory – regardless of any inability to determine whether Smalls or Kave fired the fatal shot – is

consistent with federal law.  The United State Supreme Court, in construing § 18 U.S.C. § 2, a

federal counterpart to Conn. Gen. Stat. § 53a-8, stated that "[w]ith the enactment of that section, all

participants in conduct violating a federal criminal statute are 'principals.'" *Standefer v. United*

*States*, 447 U.S. 10, 20 (1980).  Accordingly, as participants, "they are punishable for their criminal

conduct;  the *fate of the other participants is irrelevant.*"[21]  *Id.* (emphasis added and footnote

omitted).[22]

The approach of the Connecticut Appellate Court to accessorial liability continues to follow

that of federal law.  *See, e.g.*, *Gamble v. Comm'r of Correction*, 179 Conn. App. 285, 292–93 (2018)

---

[21]  The Court takes judicial notice that in 2009, in relation to the killing of Sanchez, James
Kave pled guilty to the reduced charge of manslaughter in the first degree after one day of trial
testimony on the charge of murder.  He also pled guilty at that time to  carrying a pistol without a
permit.  He was sentenced to 20 years of prison for the manslaughter charge and 1 year for the pistol
charge.  *See State v. Kave*, No. FST-CR07-0115287-T (Conn. Super. Ct. 2007).

[22]  Moreover, similar to Conn. Gen. Stat. § 53a-8, the federal statute of 18 U.S.C. § 2 makes
one "punishable as a principal" in committing an offense if one " aids, abets, counsels, commands,
induces or procures its commission."  18 U.S.C. § 2 does not establish a separate crime, but rather
is an alternative charge that permits one to be found guilty as a principal for assisting someone else
to commit the offense. As the United States Supreme Court explained:

"The statute [18 U.S.C. § 2] 'abolishe[d] the distinction between principals and
accessories and [made] them all principals.' *Hammer v. United States*, 271 U.S. 620,
628 (1926). Read against its common-law background, the provision evinces a clear
intent to permit the conviction of accessories to federal criminal offenses despite the
prior acquittal of the actual perpetrator of the offense."

*Standefer v. United States*, 447 U.S. 10, 19 (1980) (lateral citations omitted).  *See also United States
v. Mann,* 811 F.2d 495, 497 (9th Cir. 1987) ("It is not a prerequisite to a conviction for aiding and
abetting, however, that the principal be tried and convicted, or even that the principal be identified."
(citing, *inter alia, United States v. Provenzano*, 334 F.2d 678, 691 (3d Cir. 1964), *cert. denied*, 379
U.S. 947 (1964)).

("Since under our law both principals and accessories are treated as principals ... if the evidence, taken in the light most favorable to sustaining the verdict, establishes that [the defendant] committed the [crime] charged or did some act which forms ... a part thereof, or directly or indirectly counseled or procured any persons to commit the offenses or do any act forming a part thereof, then the [conviction] must stand.") (citing *State v. Gonzalez*, 135 Conn. App. 101, 107-108, (2012), *aff'd*, 311 Conn. 408 (2014)).  As under  18 U.S.C. § 2,  defendants may be convicted in Connecticut under § 53a-8(a) regardless of whether any other perpetrators are charged or convicted.

 In sum, Smalls has failed to show that the Connecticut Appellate Court's application of Conn. Gen. Stat. § 53a-8(a), Connecticut's statute regarding accessorial liability, violated any clearly established federal law. 28 U.S.C. § 2254 (d)(1).  His argument for federal habeas relief based on insufficiency of the evidence fails on the merits.  He has also failed to show that the state court's use of "concert of action" altered or diluted the burden of proof under Conn. Gen. Stat. § 53a-8(a) .[23] The fact that parties acted in concert, along with other evidence of their conduct, militates toward a finding that they "intentionally aid[ed]" each other "in conduct which constitute[d] an offense." Conn Gen. Stat. § 53a-8(a).

## IV.  CONCLUSION

Because Petitioner Smalls failed to exhaust his state court remedies regarding the federal constitutional "sufficiency of the evidence" claim raised in his present Petition, the Court DENIES

---

[23]  Petitioner did not argue, much less prove, that the decision by the Connecticut Appellate Court was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Nor did he show "an unreasonable application" of any "clearly established [f]ederal law." *Id.* (d)(1).

the requested habeas relief.[24] 28 U.S.C. § 2254(b)(1)(A). His petition to the Connecticut Supreme Court for certification to review the Connecticut Appellate Court's decision, and his supporting brief to that court, failed to provide fair notice that he sought determination on a federal constitutional "due process" claim.

Moreover, and alternatively, even had Smalls exhausted his constitutional claim in state court, this Court has examined the merits of his claim for habeas relief under *Jackson v. Virginia*, 443 U.S. 307 (1979), and determined that the resolution of his case in the Connecticut courts was neither an inconsistent nor an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). Smalls has failed to make a substantial showing of the denial of his constitutional right to due process. From the state court record, there was sufficient evidence "to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense" of murder as an accessory or principal under Conn. Gen. Stat. §§ 53a-54a and 53a-8(a). *See Jackson*, 443 U.S. at 316 (citation omitted).

Accordingly, the Court DENIES Smalls's Petition for federal habeas relief [Doc. 1] and DISMISSES the case. Although reasonable jurists might conceivably disagree with the Court's conclusion regarding exhaustion of state remedies, they could not reasonably do so with respect to the merits of his claim regarding the sufficiency of the evidence. Ample evidence supporting Smalls's

---

[24] Any challenge to the state courts' interpretation of the state's accessorial liability statute or reliance on a doctrine of interpretation established by prior state court decisions is not cognizable in this Court. *See Dhaity v. Warden*, 5 F. Supp. 3d 215, 234 (D. Conn. 2014) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.") (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir.1983) (*per curiam*)). State courts are the "ultimate expositors of state law" so that federal courts are generally "bound by their construction." *Id.* (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).

conviction was present in the state court record.  Therefore, a  certificate of  appealability ("COA") will *not* issue in this case.  *See*  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) ("To obtain a COA . . . a habeas prisoner must make a substantial showing of the denial of a constitutional right.").  Where a district court has rejected the petitioner's constitutional claim on the merits, a COA is only properly granted  where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.  The Clerk is directed to close the file.

The foregoing is SO ORDERED.

Dated:  New Haven, Connecticut
January 7, 2019

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge